# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS JACOB TRUPP<br><br>Debtor.<br>_____<br><br>TRAVIS JACOB TRUPP,<br><br>Appellant,<br>v.<br><br>HIGGS FLETCHER & MACK,<br><br>Appellee. | Case No. 16-cv-2503 DMS (DHB)<br><br>Bankruptcy No. 14-09360-CL7<br><br>**ORDER AFFIRMING THE JUDGMENT OF THE BANKRUPTCY COURT** |

Pending before the Court is an appeal from an order of the United States Bankruptcy Court, the Honorable Christopher B. Latham presiding, entered on September 28, 2016. The challenged order awarded Appellant Travis Jacob Trupp civil contempt damages against Appellee Higgs Fletcher & Mack ("HFM") for its willful discharge injunction violation pursuant to 11 U.S.C. § 105(a). The parties have fully briefed the issues presented to the Court. For the reasons set forth below, the bankruptcy court's order is affirmed.

/ / /

/ / /

/ / /

# I.

# BACKGROUND[1]

On January 14, 2009, Trupp retained HFM to represent him in a family law dispute. Daniel C. Herbert ("Mr. Herbert") of HFM was the lead attorney. HFM's services continued through October 7, 2013, at which time Trupp accrued a balance of $158,534 in unpaid legal fees.

On August 4, 2014, Trupp retained Doan Law Firm ("DLF") to seek Chapter 7 relief. On the same day, DLF sent HFM a cease and desist letter explaining that Trupp would soon be seeking bankruptcy protection. Trupp then filed his Chapter 7 petition on November 29, 2014. Thereafter, Trupp's bankruptcy case proceeded in the normal course with discharge entered on March 9, 2015. HFM received notice of the discharge's entry on March 12, 2015. The case was closed on the following day.

On May 13, 2015, HFM, through its attorney Catherine Morrison ("Ms. Morrison"), brought suit against Trupp in the San Diego Superior Court for breach of contract for failure to pay $158,534 in legal fees ("State Court Action"). On May 20, 2015, Trupp was served with the summons and complaint. Two days later, Trupp and DLF entered into a fee agreement to prosecute a discharge injunction violation against HFM.[2] On June 1, 2015, DLF filed a general demurrer in the State Court Action, citing Trupp's discharge. Prior to filing the demurrer, DLF did not contact HFM regarding the State Court Action constituting a violation of the discharge injunction. HFM was served with a notice of the demurrer on June 4, 2015. Ms.

---

[1] The bankruptcy court's order presents the relevant factual background and procedural history of this case, which the parties do not dispute. For purposes of brevity, the Court will summarize only the facts relevant to this appeal.

[2] The parties agreed that DLF would receive a 40% contingency fee for any sum recovered, including damages and attorneys' fees, plus unpaid costs. In addition, regardless of whether Trupp discharged DLF or DLF withdrew from representation, DLF could file an application for fees and costs in the bankruptcy court based on $495/hour for partners, $400/hour for associates, and $125/hour for paralegal staff.

Morrison reviewed the demurrer on June 16, 2015, and requested the State Court Action's dismissal with prejudice on the following day.

On August 19, 2015, Trupp filed an application for order to show cause ("OSC") as to why HFM should not be held in contempt for its alleged violation of the discharge injunction. In the application, Trupp asserted HFM intentionally violated the discharge injunction by bringing the State Court Action. As a result, Trupp claimed he (1) incurred actual damages exceeding $5,300, (2) experienced extreme emotional distress, sleepiness nights, anxiety, and other anguish, (3) spent over 100 hours responding to the complaint and locating paperwork, (4) delayed his search for employment due to the need to reschedule an industry certification examination, and (5) experienced stress when taking his tests. Trupp contended the stress caused by the State Court Action "was far worse than his lengthy divorce and all the combat missions he flew over Bosnia, Kosovo, and Afghanistan while under enemy fire." (Record on Appeal ("ROA") at 226.)

After hearing Trupp's application, the bankruptcy court issued an OSC, concluding Trupp had made a prima facie showing of a discharge injunction violation. Following the evidentiary hearing, the bankruptcy court issued an order, finding that HFM willfully violated the discharge injunction and should face civil contempt sanctions under § 105(a). The court, however, found that Trupp failed to conspicuously mitigate his damages for the following reasons:

> Simply put, there was no need to file the demurrer when the entire matter could have been resolved by calling or writing HFM. HFM and Ms. Morrison stated convincingly that they would have acted immediately had DLF notified them of their violation. The court accepts that. Indeed, the entire matter could have been resolved in about an hour: (1) 30 minutes to analyze the facts (HFM received notice of the bankruptcy filing; its debt was scheduled; no nondischargeability suits were filed; HFM received notice of the discharge's entry; and HFM filed a post-discharge collection action); and (2) 30 minutes to explain to Debtor. This could have been done as soon as Debtor contacted DLF on May 22, 2015. Instead, DLF prepared the demurrer and filed it ten days later….

(Record on Appeal at 236.)

The bankruptcy court awarded Trupp civil contempt damages in the amount of $1,067.50, consisting of $500 in general damages, $217.50 in demurrer filing fees, and $350 in attorneys' fees. The order was entered on September 28, 2016, and Trupp timely appealed.

## II.

## LEGAL STANDARD

The bankruptcy court's decision to impose civil contempt sanctions for a violation of the discharge injunction under 11 U.S.C. § 105(a) is reviewed for an abuse of discretion. *In re Nash*, 464 B.R. 874, 878 (B.A.P. 9th Cir. 2012). On appeal, the district court reviews the bankruptcy court's findings of fact for clear error and reviews its conclusions of law de novo. *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Under the abuse of discretion standard, the first step is to determine de novo whether the court applied the correct legal rule. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If it failed to do so, it abused its discretion. *Mujica v. AirScan, Inc.*, 771 F.3d 580, 589 (9th Cir. 2014). If the court applied the correct legal rule, the second step is to determine whether the court's application of the law to the facts was: "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the record.'" *Id*. (quoting *Hinkson*, 585 F.3d at 1262). "To reverse for abuse of discretion [the Court] must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached." *In re Hansen*, 368 B.R. 868, 875 (B.A.P. 9th Cir. 2007).

## III.

## DISCUSSION

Appellant contends the bankruptcy court abused its discretion in determining the amount of civil contempt damages. Initially, Appellant argues the bankruptcy court applied an incorrect legal standard when it held that he had a duty to mitigate

1    his damages. The Court disagrees because "the law is well established that in

2    determining reasonable damages, the bankruptcy court 'must examine whether the

3    debtor could have mitigated the damages....'" *Lumetta v. Arborlake Homeowners*

4    *Ass'n*, No. 16CV1817-AJB (JLB), 2017 WL 1967327, at *6 (S.D. Cal. May 12,

5    2017) (quoting *In re Roman*, 283 B.R. 1, 12 (B.A.P. 9th Cir. 2002)); *see also In re*

6    *Oh*, No. ADV. 03-05342-ASW, 2008 WL 8448837, at *12 (B.A.P. 9th Cir. Apr. 16,

7    2008); *In re Cutting*, No. 14-60309-7, 2015 WL 4331152, at *3 (Bankr. D. Mont.

8    July 15, 2015); *In re Moreno*, 479 B.R. 553, 570 (Bankr. E.D. Cal. 2012).

9    Specifically, bankruptcy courts consider the following two factors when awarding

10   attorneys' fees as sanctions: "'(1) what expenses or costs resulted from the violation

11   and (2) what portion of those costs was reasonable, as opposed to costs that could

12   have been mitigated.'" *In re Roman*, 283 B.R. at 12 (quoting *In re GeneSys, Inc.*,

13   273 B.R. 290, 296 (Bankr. D.C. 2001) (applying contempt sanctions under § 105)).

14   Therefore, Appellant's argument is without merit.

15       Moreover, Appellant argues the bankruptcy court abused its discretion by

16   "fail[ing] to properly apply the legal standard of 'duty to mitigate,' assuming one

17   exists." (Opening Br. at 32.) Appellant, however, fails to identify the bankruptcy

18   court's misapplication of such legal standard. He merely states the bankruptcy court

19   misunderstood *In re Roman*. Appellant's argument is devoid of any "citations to the

20   authorities and parts of the record on which the Appellant relies." Fed. R. Bankr. P.

21   8014(a)(8). The Court therefore declines to address this argument because it is

22   waived. *See Lumetta*, 2017 WL 1967327, at *5. Appellant also contends the

23   bankruptcy court applied an incorrect legal standard by second-guessing his legal

24   strategy in filing the demurrer when it found that he did not mitigate his damages.

25   In support, he relies on language taken out of context from *In re Roman* and case

26   law irrelevant to the present action. As stated above, *In re Roman* held that when

27   awarding attorneys' fees as sanctions, the bankruptcy court must determine whether

28   the fees or costs resulting from the violation were reasonable or could have been

mitigated.  The bankruptcy court did just that.  The court evaluated the requested costs and fees and determined these expenses could have been mitigated.  Based on the bankruptcy court's findings, it has been made sufficiently clear that any brief communication by DLF with HFM regarding the discharge injunction would have led to the prompt and full resolution of the State Court Action, and there would have been no need to incur additional attorneys' fees and costs.  The court found that Ms. Morrison stated convincingly that HFM would have acted immediately had DLF notified them of their violation.  In fact, when Ms. Morrison discovered Appellant's discharge, she dismissed the State Court Action with prejudice the following day.  Subsequently, DLF engaged in settlement negotiations with HFM for two months, without success, thereby further incurring more attorneys' fees.  The bankruptcy court, therefore, did not abuse its discretion in applying *In re Roman* to find that Appellant failed to mitigate his damages.

Lastly, Appellant contends the bankruptcy court misapplied the proper legal standard for determining reasonable attorneys' fees when it reduced the requested hourly rate from $495 to $350.[3]  Specifically, Appellant claims the court misapplied 11 U.S.C. § 330 when it compared the requested hourly rate with those charged by comparably skilled practitioners in bankruptcy cases rather than non-bankruptcy cases.  Section 330(a) provides that courts may determine "reasonable compensation" by considering "the nature, the extent, and the value of such services, taking into account all relevant factors, including … (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled

---

[3] Appellant also contends without any analysis the Court misapplied the legal standard when it reduced DLF's requested hours to one hour.  The Court deems this argument waived because it is devoid of any "citations to the authorities and parts of the record on which the Appellant relies."  Fed. R. Bankr. P. 8014(a)(8); *see In re Sedgwick*, 560 B.R. 786, 792 n.4 (C.D. Cal. 2016) ("an issue has been waived if it is merely listed in the opening brief without being addressed in the argument section.") (citation omitted).

practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(1)(A) & (a)(3)(F). The court, however, "may ... award compensation that is less than the amount of compensation that is requested." *Id.* at § 330(a)(2). As both parties recognize, "It is well settled that the burden is on the attorney claiming a fee in a bankruptcy proceeding to establish the value of his services." *Bayer Wishman & Leotta v. Danielson*, No. EDCV 13-01430 DDP, 2014 WL 4187815, at *3 (C.D. Cal. Aug. 22, 2014) (quotation omitted). A party seeking fees must provide "satisfactory evidence" that its fees "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Typically, "[a]ffidavits of the [party's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "Where a party seeking fees has not provided sufficient evidence of the reasonableness of its fees, a trial court is entitled substantial discretion in determining appropriate fees and costs." *Danielson*, 2014 WL 4187815, at *3 (citations omitted); *see Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065 (10th Cir. 2002) ("Where a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate").

Here, Appellant requested an hourly rate of $390 for Mr. Doan. The record, however, shows Appellant has failed to produce satisfactory evidence that the requested rate is in line with those prevailing in the community of comparable services in non-bankruptcy cases. All that Appellant has produced are an affidavit of Mr. Doan, which says nothing about the prevailing market rate in the community, billing entries, and a fee agreement between DLF and Appellant. *See Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) (holding that the prevailing market rate—not the individual contract between the attorney and the client—

– 7 –                    16-cv-2503 DMS (DHB)

"provides the standard for lodestar calculations"). In the absence of such evidence, the bankruptcy court considered Mr. Doan's experience and qualifications and determined a reasonable hourly rate for his services rendered based on the court's own assessment of the appropriate value of the services. Because Appellant failed to meet his burden of establishing reasonable hourly rate and the bankruptcy court has wide discretion in the award of fees, the bankruptcy court did not err in determining a reasonable hourly rate of $ 350/hour.[4] Accordingly, the court did not abuse its discretion in determining the amount of civil contempt damages.

### IV.

### CONCLUSION

For these reasons, the order of the bankruptcy court is hereby affirmed. The Clerk of Court shall enter judgment accordingly and terminate this case.

**IT IS SO ORDERED.**

Dated: September 19, 2017

Hon. Dana M. Sabraw
United States District Judge

---

[4] Appellant contends DLF's hourly rates should have been subject to a multiplier. As Appellant acknowledges, however, he failed to raise this argument before the bankruptcy court. The Court therefore declines to address it because it is waived. *See Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) ("Ordinarily, an appellate court will not hear an issue raised for the first time on appeal."); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it).